**Tagged Opinion**

ORDERED in the Southern District of Florida on _May 11, 2009_



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**DANIEL L. DAILEY,**

          Debtor.

_____/

Case No. 05-90029-JKO

Chapter 7

**SONEET R. KAPILA, Trustee,**

          Plaintiff,

vs.

**DANIEL L. DAILEY,**

          Defendant.

_____/

Adv. Proc. No. 06-01546-JKO-A

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On February 4, 2009, the court conducted a trial of this proceeding on the trustee's five-count complaint objecting to the debtor's obtaining a discharge of his debts pursuant to section 727(a) of the Bankruptcy Code, and the debtor's answer. The court makes the following findings of fact[1] and conclusions of law:

---
[1]

    The paragraphs labeled A through CC are the stipulations of fact submitted by the plaintiff and approved in paragraph 1 of the court's pretrial order [DE 68] after the defendant failed to contest or otherwise respond to the proposed stipulations for more than two months, which was also more than two months after the original November 2008 deadline for agreeing upon stipulated facts. Although the debtor in his trial testimony stated that he did not know if Stipulations Q and R—the only stipulations not fully corroborated by the plaintiff's trial exhibits offered into evidence—was true or not, he did not otherwise contest any of the facts.

### *Findings of Fact*

A.     The debtor filed his voluntary petition commencing this chapter 7 case on October 14, 2005.

B.     At the close of business on October 13, 2005, the debtor owned a checking account #3794 (the "Peoples account") at People's Bank in Moorehead, Kentucky.

C.     On October 13, 2005, the debtor deposited check #535 in the amount of $24,000 from the Peoples account into his account #1428 at Bank of America (the "BofA account"). The check is post-dated October 14.

D.     On October 14, 2005, the debtor borrowed $25,000 on a line of credit from People's Bank secured by a mortgage upon a parcel of real property that he owned located in Kentucky. He deposited this amount into the Peoples account on October 14, leaving the account with a balance of $25,894.32.

E.     The balance of funds in the Peoples account at the close of business on October 14, 2005 was $25,894.32, but the $24,000 check deposited October 13 into the BofA account had not yet been posted to the Peoples account.

F.     The Peoples account had only two transactions on October 14: the $25,000 deposit, and a $24,000 debit by the check described above by which monies were transferred from the Peoples account to the BofA account.

G.     At the close of business on Thursday, October 13, 2005, the balance of funds in the BofA account was $33,346.44.

H.     The only transactions in the BofA account on October 14, 2005 were debits, totaling $6,823.69. There were no deposits.

I.     At the close of business on October 14, 2005, the balance of funds in the BofA account was $26,522.75.

2

J.      On October 11, 2005, Your Discount Broker, Inc. issued a check in the amount of $5,470 made payable to Dan Dailey, from his account #3LR-121303-1 at Your Discount Broker, Inc.  Mr. Dailey deposited the check into the BofA account on Monday, October 17, 2005.

K.      The $26,522.75, $1,894.32, and $5,470 described above were property of the estate when the debtor commenced this case.

L.      In the debtor's schedules of assets filed on December 2, 2005, the debtor listed the value of the BofA account as of the petition date as $33,336.44. This matches the amount shown on the bank statement for the BofA account as the balance in the account at the close of business on October 13, 2005.

M.      The debtor claimed the entire BofA account as exempt on his Schedule C, filed December 2, 2005, citing Article 10, Section 4(a) of the Florida Constitution.

N.      The trustee timely objected to the claimed exemption for the account, and the exemption was disallowed.

O.      The debtor did not list his Your Discount Broker, Inc. account or the check from that account that he was preparing to deposit as an asset in his schedules.

P.      The debtor did not list the Peoples account or the check from that account that he was preparing to deposit into the BofA account as an asset in his schedules.  However, the $24,000 of the $25,894.32 in the People account on October 14, was included in the $33,336.44 which the debtor scheduled as the value of his BofA account.

Q.      On October 21, 2005, Mr. Dailey drew another $12,000 from the line of credit on his Kentucky property, and People's Bank deposited that sum into the Peoples account.  On October 24, People's Bank debited the account $12,000, for a check which Mr. Dailey had written to himself and deposited into the BofA account.  Consequently, Mr. Dailey, post-

3

petition, effected a transfer of $12,000 of the equity in his Kentucky property into his Bank of America account in Florida.  That $12,000 was property of the estate.

R.    At the time that the debtor signed and filed his Schedule D on December 2, 2005, he included the additional borrowings on the secured line of credit in the amount of the secured claim, even though the $12,000 described above was not yet owing to People's Bank on the petition date.

S.    On October 19, 2005 the debtor deposited into the BofA account a United States Treasury check dated October 13, 2005 in the amount of $3,053.69, from a tax refund.  These funds were also property of the estate on the petition date.

T.    The debtor did not list his entitlement to a tax refund as an asset in his schedules.

U.    In February 2006, the debtor received a Rule 2004 examination notice which included a document request.

V.    The Rule 2004 examination was held on February 23, 2006.

W.    At no time prior to the Rule 2004 examination did the debtor produce any documents relating to the Peoples Bank account or the Your Discount Broker, Inc. account or the tax refund or disclose the existence of these assets to the court or to the trustee.

X.    Prior to Bank of America's and Peoples Bank's production of the debit and credit items from October 2005, the debtor consistently argued to the court that the $24,000 had not been deposited into the BofA account until October 14, 2005 and was not property of his estate. At a hearing on April 24, 2006, the debtor's then counsel, Michael Sheinvold, presented a document that the debtor gave to Mr. Sheinvold. That document shows that the debtor made the $24,000 deposit on October 14, which is not true.

Y.    On May 16, 2006, the court entered its Order Granting in Part Trustee's Motion for Turnover of Debtor's Non-Exempt Property in the main case, directing the debtor to turn

4

over $8,252.10 within ten days. The debtor didn't turn over the monies until after this suit was filed on June 1, 2006 pointing out the debtor's refusal to turn over the monies.

      Z.     On May 26, 2006, the court entered its Order Granting Trustee's Supplemental Motion for Turnover of Debtor's Non-Exempt Property and Trustee's Motion to Compel Production of Documents, directing that the debtor produce all requested documents, including:

> all documents relating to the mortgages and mortgage re-financings for the Boca Raton home purchase;

> all documents relating to the real properties located in Kentucky, including HUD-1 closing statements, mortgages and mortgage re-financings; and

> all bank records for the bank account(s) in Kentucky

within ten days. The debtor never produced any of these records, before or after his failure to produce was highlighted in the adversary complaint.

      AA.    At the Rule 2004 examination the debtor testified that his only relationship with Metragen Pharmaceuticals, Inc. was that he provided consulting services from time to time.

      BB.    The debtor wrote Metragen Pharmaceuticals, Inc. a $16,500 check from the BofA account on October 21 which paid Metragen's rent to its landlord. The $16,500 came from property of the estate.

### *Additional facts established at trial*

      The debtor did not file his schedules of assets and liabilities or his statement of financial affairs in this case until December 2, 2005, after signing both documents under headings that read:

> I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 34 sheets plus the summary page, and that they are true and correct to the best of my knowledge, information, and belief.

Schedules, page 35; and

> I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and

5

correct.

Statement of Financial Affairs, page 44.

The schedules disclose that the debtor owned a bank account at Bank of America with a balance of $33,346.44, an amount which matches exactly the balance that the debtor's own Bank of America online printout of his account activity statement shows as the balance in the account on the petition date, October 14, 2005. However, the schedules and statement of financial affairs do not disclose that the debtor still had an account at Peoples Bank, an account that still held $1,894.32, and into which the debtor added $12,000 drawn postpetition from a mortgage on the estate's prepetition real property in Kentucky. The schedules and statement of financial affairs specifically ask for a listing of open accounts and accounts closed during the past year. The debtor testified that he was confused by severe family and business problems at the time of his bankruptcy petition, that he relied on his assistant to work with his bankruptcy counsel to prepare the schedules, and that he simply didn't notice the omissions.[2]

Although the schedules and the statement of financial affairs provide places to list investment accounts, both open and recently closed, none are listed. The debtor testified that he must have simply not noticed that his Your Discount Broker account was nowhere mentioned.

The place provided in the schedules asking the debtor to describe his entitlement to an income tax refund is blank. The debtor testified that he hadn't expected to receive the postpetition refund, since he owed money to the IRS, and was surprised to receive it, but deposited the monies, and quickly spent them as if they belonged to him and not to his estate. His reasoning at trial was that he was desperate for money at the time. He says that he had probably forgotten about the monies by the time he signed his schedules six weeks later.

---

[2]The debtor ascribes considerable fault to his former bankruptcy counsel, who was permitted to withdraw in March 2008. I can reach no conclusions as to what portion, if any, of the disclosure failures are attributable to Mr. Shienvold but note that the debtor was responsible for his own representations made under penalty of perjury.

6

None of the Your Discount Broker monies ($5,470.00), none of the tax refund monies ($3,053.69), none of the October 14 balance in the Peoples Bank account ($1,894.32), and none of the Peoples Bank postpetition mortgage draw ($12,000) could have overlapped with the $33,346.44 in petition-date monies in the Bank of America account which the debtor disclosed. The bank records and the debtor's own Quickbook records prove that the $33,346.44 did include the $24,000 which Mr. Dailey had transferred on October 13-14 from Peoples Bank, and other funds already in the account *but not* the four omitted assets that were deposited postpetition.

I find that there was a motive for this debtor, as there is for any dishonest debtor, not to disclose prepetition accounts and assets that generate postpetition cash: a trustee would not normally be expected to review postpetition bank statements or to ask a debtor to trace postpetition deposits back to their sources. The debtor here later failed to produce the very documents that would have exposed the existence of the undisclosed assets which were property of the estate. It is not credible to characterize this failure as a coincidence and I find that the debtor's testimony on this issue was false.

The debtor's explanation that he was distracted and not paying attention to the schedules is not credible. He is a businessman and a former stockbroker, and had more than adequate time to prepare and read his schedules and statement of financial affairs. I have seen no evidence that any debts were omitted, only assets, and particularly assets that the debtor had recently liquidated but not yet deposited.

I draw an adverse inference from the debtor's failure to call his bankruptcy counsel to testify at the trial, since his defense to the trustee's nondisclosure complaints boils down to charging his former counsel with failing to incorporate correct information, possibly provided by Mr. Dailey's assistant to the former counsel, into the schedules and statement of financial affairs. The bankruptcy counsel's workpapers might have corroborated the debtor's testimony that his

7

failures to disclose were accidental. The debtor's decision not to call Mr. Shienvold as a witness suggests that his workpapers would provide no such corroboration.

The pattern of nondisclosures by type and timing, the relationship of the undisclosed assets to the documents which the debtor failed to produce even after being ordered to produce them,[3] the fact that the debtor's liquidation of the assets should have still been fresh in the debtor's memory when he signed the schedules and statement of financial affairs, and the fact that he never amended his schedules as the trustee's investigation progressed, provide more than sufficient circumstantial evidence of a fraudulent intent to conceal the assets from the trustee. This is a financially sophisticated debtor, not a financial innocent whose omissions might be more plausibly understood. I find that this debtor engaged in a deliberate and calculated attempt to hide assets from his trustee and willfully failed to obey valid court orders to produce documents which would, in all probability, have disclosed his scheme.

I have not taken into account the two incomplete transcripts of Rule 2004 examinations offered as Trial Exhibits 15 and 16, except to the extent incorporated into Stipulated Facts *W* and *AA*.

### Conclusions of Law

This court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(J) and 1334, and 11 U.S.C. § 727(a). This is a core proceeding.

The plaintiff trustee has the burden of establishing the debtor's actual fraudulent intent by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the plaintiff and in favor of the debtor. *Schweig v. Hunter (In re Hunter),* 780 F. 2d 1577, 1579 (11th Cir. 1986).

---

[3]The debtor offered no plausible explanation for his failure to produce documents he had been ordered to produce, and such failure can hardly be explained by alleged improprieties of his former counsel.

8

"Concealment" occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer. *In re Greene,* 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006). An omission from schedules becomes a concealment when it is both fraudulent and material. *Swicegood v. Ginn,* 924 F. 2d 230, 232 (11th Cir. 1991). It is material, and therefore sufficient to bar discharge, if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984). The concealment of an asset is fraudulent when the omission of the information is intended to go unnoticed by the trustee. While I recognize that there is a materiality threshold for assets as well as for documents, the four assets of this estate that the trustee established were concealed from Mr. Dailey's schedules cross that threshold.

As to Count 1, I find that Mr. Dailey's nondisclosures of his tax refund, his Your Discount Broker account, and his Peoples Bank account described above constituted a concealment of property of the estate after the date of the filing of the petition with intent to hinder, delay or defraud the trustee charged with custody of property of the estate under the Bankruptcy Code, and his discharge must be denied pursuant to 11 U.S.C. § 727(a)(2)(B).

As to Count 2, I find that the debtor either concealed, destroyed, or failed to keep or preserve recorded information, specifically Peoples Bank and Your Discount Broker statements, from which the debtor's financial condition or business transactions could be ascertained, and his discharge must be denied pursuant to 11 U.S.C. § 727(a)(3).

As to Count 3, I find that the debtor knowingly and fraudulently made a false oath or account in connection with the case, by intentionally failing to accurately list his tax refund, his Your Discount Broker account, and his Peoples Bank account, in his schedule of assets, and by intentionally failing to truthfully answer the question in the statement of financial affairs regarding

9

income received prepetition (Question 2) and, if either his Your Discount Broker or Peoples Bank was closed prepetition, regarding closed accounts (Question 11). His discharge must be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

As to Count 4, the trustee did not meet his burden of proof and the count shall be dismissed.

As to Count 5, I find that the debtor willfully refused to obey lawful orders of the court, by failing to comply with (i) this court's Order Granting in Part Trustee's Motion for Turnover of Debtor's Nonexempt Property and (ii) this court's Order Granting Trustee's Supplemental Motion for Turnover of Debtor's Nonexempt Property and Trustee's Motion to Compel Production of Documents, and his discharge must be denied pursuant to 11 U.S.C. § 727(a)(6)(A).

A separate judgment will be entered pursuant to Fed. R. Bankr. P. 9021.

### 

Copies to be furnished by CM/ECF to:

Patrick S. Scott, attorney for trustee
Kevin C. Gleason, attorney for debtor

10